UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WILLIAM S. NEWMAN,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | Case No. 20-CR-19-1-JPS<br><br>**ORDER** |

On January 28, 2020, an indictment was filed against Defendant William S. Newman ("Defendant" or "Newman") charging him with twelve counts of wire fraud, scheme to defraud, money laundering, and bank fraud, in violation of 18 U.S.C. §§ 1343, 1344, 1956, and 2314. (Docket #1). On March 26, 2020, Defendant filed a motion to suppress evidence obtained during (1) a search of his vehicle upon arrest and (2) a search of his electronic devices. (Docket #21, #22). On April 22, 2020, Magistrate Judge William E. Duffin filed a Report and Recommendation ("R&R") recommending that the motion to suppress be denied. (Docket #29). Defendant objected, and the government filed a response. (Docket #31, #32). No reply was submitted; therefore, the R&R objections are now fully briefed. For the reasons explained below, the Court will adopt Magistrate Judge Duffin's R&R and deny the motion to suppress.

1. **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, this Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate." *Id*. The Court's review encompasses both the magistrate's legal analysis and factual findings. *Id.*; *see also* Fed. R. Crim. P. 59(b).

## 2. RELEVANT FACTS

Defendant does not object to Magistrate Judge Duffin's characterization of the facts, so they will be adopted in full and inserted in substantially the same format below, from Docket #29 at 2–3, for ease of reference.

On March 5, 2018, Newman provided a false social security number on a membership application that he filled out with Focus Credit Union in Wauwatosa, Wisconsin. One week later, on March 12, 2018, he applied for and received a loan from Focus Credit Union in the amount of $51,866.50 for a 2017 black Volvo S90. In filling out the loan documents, Newman again provided the false social security number. After making one loan payment of $700 on April 25, 2018, he stopped making payments. The Volvo was repossessed on August 10, 2018, but returned to Newman after he paid $2,034.37. Newman made no further payments on the Volvo. The Volvo was subsequently entered into the National Crime Information Center ("NCIC") as stolen because of the default and because of Newman's fraud in obtaining the loan.[1] (Docket #22-1 ¶ 19).

On September 19, 2019, while driving the Volvo, Newman was pulled over by officers from the Glendale Police Department. Newman was

---

[1] It is not clear when it became known that Newman used a fraudulent social security number to obtain the loan.

arrested[2] and searched. On his person, they found an Apple iPhone, a Samsung Galaxy S9 phone, and $8,682 in cash.

After Newman's arrest, the Volvo was turned over to the Wauwatosa Police Department. Before releasing the Volvo to the Focus Credit Union, Task Force Agent John Milotzky searched it on September 13, 2019—the day after Newman's arrest. In the trunk, Agent Milotzky found a black messenger bag which contained a WE Energies statement for Newman, Newman's Wisconsin driver's license, business cards for Newman, and business cards from Guardian Credit Union. Inside the bag was also a Bank of America cashier's check for $27,000 to Keith Kohlheim; a Bank of America cashier's check for $6,700 to Newman; a U.S. Bank cashier's check for $5,500 to Lovie Diggs; a U.S. Bank cashier's check for $5,500 to Althinia Lofton; a Chase Bank deposit receipt for $45,000 for the deposit of a Bank of America cashier's check; a U.S. Bank receipt showing a $500 withdrawal from an account with a balance of $18,318.52; an HP Chromebook laptop; and $3,600 in cash.

Agent Milotzky then began an investigation into the financial documents found on Newman and in the Volvo. The investigation ultimately led Agent Milotzky to request a search warrant of the two phones and the HP Chromebook, which this Court signed on October 23, 2019. Newman has moved to suppress the evidence obtained from these devices and the evidence obtained from his person and the Volvo at the time of his arrest.

---

[2]Magistrate Judge Duffin's R&R does not say why Newman was arrested, but it can be inferred that it was because he was driving a stolen vehicle. In any case, the parties do not dispute that the arrest was valid.

3. ANALYSIS

    3.1 Motion to Suppress Evidence from Search Incident to Lawful Arrest

        3.1.1 Search of Person

The Fourth Amendment establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Subject to specific exceptions, an officer must obtain a warrant prior to conducting a search of any person or place where a reasonable expectation of privacy exists. *Riley v. California*, 573 U.S. 373, 382 (2014). One of these exceptions is a search incident to the lawful arrest: "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson*, 414 U.S. 218, 235 (1973).

Defendant does not argue that his arrest lacked probable cause, and, therefore, that the search incident to the arrest was unlawful. Rather, he contends that there was "no reason to suspect that any of the belongings found on his person. . .had anything to do" with his crime of arrest. (Docket #22 at 6). However, while *Robinson* acknowledges that the rationale for the searches are to ensure officer safety and prevent the imminent destruction of evidence, the decision also explains that a search incident to a lawful arrest need not "depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." 414 U.S. at 235. In effect, the Supreme Court "held without qualification that a search of an arrestee's person [i]s *per se* reasonable under the Fourth Amendment." *United States v. Gary*, 790 F.3d 704, 709 (7th Cir. 2015) (citing *Robinson*, 414 U.S. at 235).

Thus, when the officers arrested Defendant on suspicion of fraud and found two cell phones and $8,682 in cash on his person, they were within their rights to seize those items as potential evidence underlying the crime of fraud. While they would have needed warrants to search the phones, they were permitted to take custody of them for a brief amount of time prior to obtaining those warrants. *See Riley*, 573 U.S. at 401. Thus, the initial, warrantless search of Defendant's person during his lawful arrest, which revealed his phones and $8,682 in cash, was proper.

### 3.1.2 Search of Vehicle

A search of a vehicle incident to a lawful arrest may not be conducted without a warrant, unless "an arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *Arizona v. Gant*, 556 U.S. 332, 346 (2009). However, there are two issues raised by the facts of this case: first, whether Defendant had a reasonable expectation of privacy in a car that was obtained by fraud (in other words, whether Defendant has standing to challenge the search); and second, even if he did have standing, whether this search fell within the inventory search exception to the warrant requirement.

#### 3.1.1.1 Reasonable Expectation of Privacy/ Standing

Before a person can assert a Fourth Amendment claim, he must have a subjective and reasonable expectation of privacy in the place being searched. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *Katz v. United States*, 389 U.S. 347, 361 (1967) (J. Harlan, concurring). The Seventh Circuit has asserted that "a person present in a stolen car does not have a reasonable expectation of privacy in the car." *United States v. Sholola*, 124 F.3d 803, 816

n.14 (7th Cir. 1997) (internal punctuation omitted) (quoting *United States v. Garcia*, 897 F.2d 1413, 1418 (7th Cir. 1990) (holding that a defendant had a reasonable expectation of privacy in a truck that was suspected of being stolen where the government failed to "prove[] by a preponderance of the evidence that it is more likely the truck was stolen than [defendant] had permission to use the truck."))[3]

Courts outside of this circuit have consistently concluded that defendants do not have a reasonable expectation of privacy in property that they fraudulently obtained. *United States v. Gordon*, 65 F. Supp. 2d 365, 269 (E.D. Va. 1999) ("society would not recognize as reasonable an expectation of privacy in a vehicle obtained by fraud."); *United States v. Caymen*, 404 F.3d 1196, 1201 (9th Cir. 2005) (holding that there was "no ground on which to distinguish property obtained by fraud from property that was stolen by robbery or trespass."); *United States v. Johnson*, 584 F.3d 995, 1001 (10th Cir. 2009) (finding no reasonable expectation of privacy in a storage unit obtained using a stolen identity).

Absent any clear guidance from the Seventh Circuit on the issue of items obtained by fraud, and given the particular facts of this case—wherein Defendant obtained the vehicle by fraud, had the vehicle repossessed for failure to make payments, regained possession of it, then continued to fail to make payments, such that the vehicle was ultimately reported as stolen—the Court finds that Defendant did not have a privacy interest in his vehicle. Defendant's arguments that his payments on the loan gave him a reasonable expectation of privacy are unavailing under these

---

[3] The Court notes that *Sholola* uses the pre-*Gant* standard for conducting searches of cars incident to a lawful arrest, which is no longer applicable. *See e.g.*, 124 F.3d at 818.

circumstances, because the vehicle had already been impounded once for failure to pay, and upon getting it back, Defendant *continued* to fail to make payments. Moreover, the fact that Defendant paid a certain amount of money towards the vehicle may render it "less" stolen, but not substantially so—a consumer who puts a few pennies on the counter and walks out with an armful of groceries has still failed to pay for most of those groceries. Indeed, regardless of how Defendant obtained the car, the fact that it was reported as stolen due to his failure to make payments puts this scenario firmly into the sphere of cases finding that there is no reasonable privacy interest in stolen goods. *See Sholola*, 124 F.3d at 816 n.14. The Court concludes that Defendant did not have a reasonable expectation of privacy in the vehicle, and therefore has no standing to challenge the search.

### 3.1.1.2 Inventory Search

Notwithstanding the lack of a reasonable expectation of privacy in the stolen vehicle, the search of the trunk may also be reasonable under the inventory search exception. As the Seventh Circuit explained in *United States v. Jackson*, "warrantless inventory searches of impounded vehicles by authorities pursuant to a standard police policy or procedure do not violate the Fourth Amendment." 189 F.3d 502, 508 (7th Cir. 1999) (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). This exception to warrantless vehicular searches "allows police to search vehicles prior to impoundment so as to prevent false claims of loss of property or vehicular damage." *Id*. A warrantless search may be constitutional if "(1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an

arrested person and in accordance with established inventory procedures." *Id.* (quoting *United States v. Velarde*, 903 F.2d 1163, 1165 (7th Cir. 1990)).

Defendant has not objected to Magistrate Judge Duffin's conclusion that this was a lawful exercise of the inventory exception, he only argues that the evidence obtained was not related to the crime for which he was arrested. *See* (Docket #31). Be that as it may, that is not the standard for evaluating the constitutionality of inventory searches. Rather, Defendant must first show that he had a reasonable expectation of privacy in the property (which, as discussed above, he does not), and, second, that the search was unreasonable, i.e., not conducted pursuant to settled inventory policies and procedures.

The government has not offered much by way of discussion as to the reasonableness of the inventory search—they do not explain whether the police department in question had an inventory search policy, nor what it was, and there is some question as to the propriety of looking through Defendant's messenger bag, and then rifling through the mail and personal papers found therein, in order to effectuate the inventory search. *See Florida v.* Wells, 495 U.S. 1, 4 (1990) (holding that "standardized criteria. . .or established routine must regulate the opening of containers found during inventory searches" in order to uphold "the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."). Nevertheless, the Court need not discuss this matter further because, as explained above, Defendant lacked a cognizable property interest in the fraudulently obtained—and registered as stolen—vehicle.

### 3.2 Unreasonable Delay in Obtaining Warrant for Electronics

The Court has already addressed the propriety of the seizure of the electronic items found on Defendant's person and the stolen vehicle. However, as this Court has stated before, once an item is seized, it cannot be left to languish in an evidence closet. "When an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant." *United States v. Burgard*, 675 F.3d 1029, 1035 (7th Cir. 2012).

In determining whether a delay is constitutional under the Fourth Amendment, courts will consider (1) the length of time of the delay; (2) the individual's "possessory interest" in the seized object; (3) the state's basis for the seizure; and (4) whether the state "diligently pursued their investigation" following the seizure. *Id.* at 1033. A longer delay infringes a person's possessory interest and undermines the criminal justice process. *Id.* This balance between "privacy-related and law enforcement-related concerns" will determine "if the intrusion was reasonable." *Illinois v. McArthur*, 531 U.S. 326, 331 (2001).

In evaluating the strength of a person's possessory interest, courts can consider whether the person "assert[s] a possessory claim" to the item after it is seized, such as "by checking on the status of the seizure or looking for assurances that the item would be returned." *Burgard*, 675 F.3d at 1033. The government has a stronger interest in items seized on the basis of probable cause, rather than those seized on the basis of reasonable suspicion, and delays in probable cause seizures are considered more tolerable. *Id*. To illustrate this sliding scale, the Seventh Circuit in *Burgard* compared *McArthur*, 531 U.S. at 331, where the Supreme Court upheld the

Page 9 of 11
Case 2:20-cr-00019-JPS   Filed 07/17/20   Page 9 of 11   Document 33

seizure of a dwelling after a two-hour delay in securing a warrant, with *United States v. Place*, 462 U.S. 696, 709 (1983), where the Supreme Court suppressed evidence obtained after a ninety-minute seizure based on reasonable suspicion. *Burgard*, 675 F.3d at 1033.

In this case, the length of the delay between the seizure and the warrants was six weeks—a fairly lengthy amount of time. Additionally, a detained individual retains a considerable possessory interest in his personal electronics, and there is some indication that Defendant inquired after his electronics. *See United States v. Grills*, Case No. 18-CV-228, 2019 WL 5587328, at *7 (E.D. Wis. Oct. 30, 2019) (discussing *Riley*, 573 U.S. at 393–94); (Docket #25-1 at 3–4) (emails between Defendant and detective in which Defendant inquires after his personal items).

But these factors are outweighed by the government's interests in the electronics and the reasons for the delay. The government contends that their basis for the seizure was probable cause that the electronics contained information regarding the fraud for which Defendant was arrested. Therefore, a lengthier delay may be more appropriate than if the basis of the seizure was merely reasonable suspicion.

Finally—and significantly—there is a good explanation for the government's delay in obtaining a warrant to search the electronics. The government arrested Defendant on probable cause that he committed fraud, and later found cash, checks, and other financial documents in the vehicle (in which Defendant lacked a reasonable expectation of privacy) suggesting that Defendant might be involved in additional fraudulent schemes. It is true that the government could have obtained a search warrant soon after Defendant's arrest based purely on the probable cause for that arrest, and, under certain circumstances, a failure to do so with

some alacrity might point to a constitutional violation. However, in this case, the application for the search warrant also contains a thorough description of the robust inquiry that was conducted into the additional pieces of evidence that were found during and after the arrest. (Docket #22-1). The application includes a detailed explanation of how these additional pieces of evidence fit into the government's theory of the case, and why they support the application for a search warrant of the electronic devices. *Id.* ¶¶ 57–61. It is clear that the government actively investigated the facts of the case prior to requesting a search warrant for the electronic devices. Accordingly, the Court finds that the six-week delay was reasonable under the circumstances.

4. **CONCLUSION**

For the reasons explained above, Defendant's motion to suppress will be denied, and the R&R will be adopted as stated in the text of this Order.

Accordingly,

**IT IS ORDERED** that Defendant's motion to suppress (Docket #21) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Magistrate Judge William E. Duffin's Report and Recommendation (Docket #29) be and the same is hereby **ADOPTED** as stated in the terms of this Order.

Dated at Milwaukee, Wisconsin, this 17th day of July, 2020.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 11 of 11
Case 2:20-cr-00019-JPS   Filed 07/17/20   Page 11 of 11   Document 33